## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WUDENEH ZEWDIE,                         )
                                        )
                    Plaintiff,          )
vs.                                     )          NO. CIV-17-0263-HE
                                        )
SAFECO INSURANCE COMPANY OF             )
AMERICA,                                )
                                        )
                    Defendant.          )

## <u>ORDER</u>

      Plaintiff Wudeneh Zewdie sued his insurer, Safeco Insurance Company of America ("Safeco), in state court seeking to recover benefits under the provisions of a homeowners' insurance policy. He asserted breach of contract and bad faith claims. Safeco removed the action on the basis of diversity jurisdiction and moved for summary judgment, contending both claims are barred by the applicable statute of limitations.[1]

      Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" <u>Carter v. Pathfinder Energy Servs.,</u>

---

[1] *The parties have proceeded under the assumption that Oklahoma law applies. Neither party refers to a choice of law provision in the insurance contract and, because the property at issue is located in the state of Oklahoma and the alleged conduct of the insurer underlying the bad faith claim occurred here, the court has likewise assumed Oklahoma law governs plaintiff's claims.*

Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)).  Having considered the submissions of the parties in light of this standard, the court concludes Safeco's motion should be granted.

Background[2]

Plaintiff's Edmond, Oklahoma residence was insured under a homeowners' insurance policy issued by Safeco.  On November 10, 2011, plaintiff discovered water entering his residence during a rainstorm and, two days later, he submitted a claim to Safeco for the water damage.  What happens next is not completely clear.  In their briefs the parties skip to July of 2012.  However, it appears from the allegations in the petition[3] that Safeco came out soon after the damage was sustained, prepared an estimate for repairs (for less than $2000) but never issued payment, and took the position that the damage was largely caused by faulty construction not covered by the policy.  *See* Doc. #1-2; *see also* Doc. Nos. 24-3; 24-4; 26-15; 27-2.  Plaintiff apparently paid for the repairs himself and then sought reimbursement/damages from his builder through arbitration.  *See id*.  He alleges in the petition that Safeco sent him a letter on December 5, 2011, informing him that his claim had been transferred to its subrogation department.  *See also* Doc. # 24-4.

---

[2] *Page references to briefs and exhibits are to the CM/ECF document and page number. Most of the facts are undisputed.  While many are taken from plaintiff's response brief, defendant did not challenge them in its reply brief.*

[3] *Because the action was commenced in state court, the initial pleading is a petition.*

Neither party submitted that letter or any letter from Safeco explicitly pertaining to coverage under the policy prior to a letter Safeco sent plaintiff on December 30, 2013, which is discussed subsequently.

On July 30, 2012, approximately eight months after the storm and water damage, plaintiff's then-counsel, Janna Gau, sent Safeco a letter stating she had been retained to represent the Zewdies, its insureds,[4] in connection with three referenced claims. She wrote that while the insureds had attempted to work with Safeco to resolve the claims "there ha[d] been no response from your company" and in the interim the insureds had "incurred extraordinary out-of-pocket expenses for covered occurrences under their Homeowners' Policy." Doc. #24-3, p. 1. Ms. Gau then asked for the adjuster's name and contact information in order to "attempt to facilitate a resolution to these claims." *Id.* Rodney McAtee, a property loss specialist with Safeco, responded on August 7, 2012. He provided his contact information and stated that, once he received a "packet of documentation" Ms. Gau had prepared, he would review it and get back in touch with her. Doc. #26-1.

Over the next few months the parties exchanged emails and, on October 4, 2012, Mr. McAtee asked for additional information "so we can re-assess the damages to the home." Doc. 26-3. He stated that once he received the items requested they could "make

---

[4] In her July 30, 2012, letter, Ms. Gau refers to both Zewdies as the insureds. In subsequent correspondence and in the pleadings in this action the parties refer solely to Wudeneh Zewdie as the insured, but often reference both Mr. and Mrs. Zewdie. As Wudeneh Zewdie is the name insured on the policy, the court, like the parties, will refer to him as the insured. *See* Doc. #24-1, p. 1.

arrangements for the re-inspection that we discussed." *Id.* Ms. Gau sent Safeco the

requested information and on November 1, 2012, she sent him pleadings related to the

arbitration proceeding plaintiff had filed against MAC Builders, LLC. She informed him

the parties were going to participate in a mediation on December 5, 2012 and also wrote:

> It is my understanding that SafeCo has notified Mid-Continent Insurance of
> a subrogation claim relating to the above referenced claim number. As you
> are aware, SafeCo Insurance HAS NOT PAID OUT any monies relating to
> the above claim number, or any claims relating to the water damage sustained
> by the Insured. SafeCo Insurance also sent the Insured a notice of
> subrogation for any recovery in the arbitration. This is egregious. The
> Insured is out of pocket a significant amount of money to repair damage
> caused by the intrusion of water into his home. The Insured has also incurred
> attorney fees and costs associated with its attempt to recover from MAC
> Builders, LLC and obtain payment from SafeCo for its covered claims.
>
> As you are aware, any monies that SafeCo Insurance pays out to the Insured
> will be the subject of subrogation in any recovery obtained from MAC
> Builders, LLC. Safeco Insurance would also be responsible for payment of
> the Zewdies' attorney fees and costs associated with such recovery. Because
> SafeCo Insurance has refused to act in good faith in the resolution of the
> Insured's claim and has refused to pay any monies on the Insured's behalf,
> SafeCo is not in a position to assert a subrogation claim in this matter.
>
> If Safeco Insurance desires to participate in the above referenced mediation,
> please let me know. However, for Safeco to participate in the mediation at
> this juncture would be disingenuous based on the fact that it has not made
> any payments to the Insured for his covered claims. Further, it should be
> clear that the invitation to Safeco to participate in the mediation does not
> waive any of the Insured's legal rights to recover for claims against SafeCo
> Insurance based upon their refusal to act in good faith and deal fairly with
> the Insured.

Doc. #24-4.

In a letter sent to Mr. McAtee a couple of weeks later, dated November 16, 2012,

Ms. Gau confirmed the December 5, 2012, mediation. She stated that if Safeco elected to

4

attend the mediation it "should send a representative with full authority to settle <u>all</u> of the lnsured's claims against Safeco, *i.e.,* the Insured's claim for the extensive water damage to the Insured's home, as well as the Insured's claim against Safeco for its failure to deal fairly and in good faith with the Insured." Doc. #24-6.

On November 29, 2012, Michael Woodson introduced himself by letter to Ms. Gau as counsel retained by Safeco "to assist in bringing Mr. and Mrs. Zewdie's homeowners insurance claims to an agreeable resolution." Doc. #26-8. He references a meeting scheduled for November 30, 2012, at which "we can discuss the claims that have been made, the damages incurred, and the status of any repairs or reconstruction." Doc. #26-8. Mr. Woodson also confirmed that he would be attending the mediation scheduled for December 5, 2012, and stated that he hoped they could "utilize the mediation to work toward the resolution of some, if not all, of the outstanding issues." *Id.*

On December 7, 2012, two days after the mediation, Mr. Woodson sent Ms. Gau a letter stating that "[a]s indicated at the mediation, Safeco is tendering an additional payment regarding the Zewdie's flooring in the amount of $25,334.30." Doc. #26-9. And he said he "would also like the opportunity to visit with you about a convenient time to schedule an additional inspection of the home to address the current condition of the interior and any additional covered damages." *Id.* Safeco issued the check to plaintiff on December 17, 2012, and conducted an additional inspection of plaintiff's home in early January 2013. Doc. Nos. 26-10; 26-11.

On January 16, 2013, Ms. Gau sent Mr. Woodson documents pertaining to the costs the Zewdies incurred to repair and reconstruct the front and rear balconies of their home due to water damage. Mr. Woodson then sent her a supplemental estimate which had been prepared after a January supplement inspection and informed Ms. Gau that Safeco would "issue payment for the amount reflected in the estimate (which is at RCV with no depreciation)." Doc. #26-13. On February 6, 2013, Mr. Woodson sent Ms. Gau an additional check in the amount of $6,319.69, "representing the amount referenced in SafeCo's recent estimate generated following the supplemental inspection." Doc. #26-14.

A couple of weeks later, in a letter dated February 27, 2013, Ms. Gau wrote Mr. Woodson, noting his plan to "participate in the mediation of the matter <u>Zewdie v. MAC Builders, LLC</u>," and Safeco's intent to "have a representative available by telephone if necessary to discuss settlement of certain outstanding coverage claims by the insureds." Doc. #27-2, p. 1. Ms. Gau informed Mr. Woodson that the Zewdies were "out of pocket approximately $150,000.00 due to SafeCo's failure to process and handle their claims," and that it was their position, "based upon the negligent and/or willful failure of SafeCo to deal fairly and in good faith with the Zewdies, that SafeCo has waived any right to seek subrogation for any future payments of covered losses." *Id*. at p. 2.

Safeco participated in the mediation the next day and on March 12, 2013, it issued an additional payment of $10,000 to plaintiff. In the letter he sent Ms. Gau explaining the payment, Mr. Woodson stated he had "received Safeco's response to [her] request to waive subrogation as to any payments made under the Zewdie's homeowners policy." Doc. #26-

6

16. He said Safeco not only had "agreed to waive its contractual right of subrogation as to the payments it ha[d] made to date under the Zewdie's homeowners policy," but it would also "issue an additional payment of the $10,000.00 limit under the additional coverage endorsement for mold, decay and rot" and would "waiv[e] subrogation as to this additional payment as well." *Id*. He further explained that it was Safeco's position that plaintiff was "free to resolve claims with MAC Builders and its subcontractors without regard to any Safeco's right of subrogation." *Id*.

The next communication between the parties occurred on June 17, 2013. Ms. Gau sent Mr. Woodson an email on that date letting him know that the insured had reached an agreement with MAC Builders, LLC and several subcontractors. She states: "[a]fter the Global Settlement Agreement is executed by all the parties, we can discuss concluding the outstanding claims the Zewdies have with Safeco." Doc. #27-1. The agreement she referenced -- a "Final Settlement Agreement and Release in Full of All Claims" – was signed by the Zewdies, MAC Builders, LLC, Safeco and other construction companies and insurers on October 18, 2013. Doc. #26-18. While it provides for the payment of monies by other entities and the Zewdies release their claims against those entities, it does not include similar provisions pertaining to Safeco. Only two provisions of the agreement affect Safeco. In one, Safeco waives its right of subrogation against the other contractors/insurers "arising out of any damages allegedly sustained to the Home." *Id*. at p. 13. The other provides: "**It is Further Agreed** that this Settlement Agreement shall not

foreclose the Zewdies from claims for certain damages sought under their homeowners' insurance policy with SafeCo Insurance Company." *Id.* at p. 14.

The next interaction between plaintiff and defendant consists of a "**FOR SETTLEMENT PURPOSES ONLY** letter dated December 12, 2013, which Ms. Gau sent Mr. Woodson. Doc. #26-19, p. 1. She states the letter is to "serve to follow up on the outstanding coverage claims relating to the Zewdies' Homeowners Policy." Ms. Gau asserts that the water damage to the Zewdie's front and rear balcony structures fell within the coverage of the policy. She then makes a settlement offer which includes an amount for remaining claims related to water damage, the amount the Zewdies expended in attorney's fees and arbitration and mediation costs to recover their damages from MAC Builders and Safeco, and an amount for Safeco's claimed failure to deal fairly and in good faith with the Zewdies.

Mr. Woodson rejected the settlement demand by letter dated December 30, 2013. He explained that plaintiff's loss was denied because Safeco believed the damage was caused by faulty construction. While the policy did provide limited coverage for certain damages resulting from faulty construction, Mr. Woodson stated that Safeco had already paid the $10,000.00 policy limit under its additional coverage for damages caused by wet rot. He stated that Safeco was not responsible for plaintiff's arbitration fees or its legal expenses and, as Safeco had been reasonable in adjusting plaintiff's claims, it had not breached the implied duty of good faith and fair dealing. He closed the letter with "As always, if you wish to discuss, please give me a call." *Id.* at p. 4.

Plaintiff filed this action in state court on March 3, 2015. Defendant now seeks summary judgment on the ground plaintiff's breach of contract and bad faith claims are barred by the applicable two year limitations periods.

Analysis

Safeco contends both plaintiff's claims are untimely. It asserts plaintiff's breach of contract claim is barred by the two year contractual limitations period because plaintiff failed to file suit by November 10, 2013, within two years of the loss or damage. It contends plaintiff's bad faith claim is barred by Oklahoma's two year limitations period applicable to torts because plaintiff failed to file suit no later than November 16, 2013, two years after the claim accrued.

With respect to his contract claim, plaintiff responds that the limitations clause in the insurance policy is invalid. If the clause is enforceable, plaintiff argues the limitations period should be equitably tolled because of defendant's conduct of continuing to investigate plaintiff's claim from its submission until the insurer denied coverage on December 30, 2013.

Plaintiff asserts that his bad faith claim is timely because it did not accrue until December 30, 2013, and this action was filed less than two years later. If it accrued before then, plaintiff contends that he is entitled to equitable tolling because of the insurance carrier's alleged continued assurances that it was Safeco's "goal to resolve the Plaintiff's claims." Doc. #26, p. 12.

## Breach of Contract

9

The insurance policy includes the following provision:

**Suit Against Us.**  No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within two years after the inception of the loss or damage.

Doc. #24-1, p. 3.  Relying on <u>Blue v. Universal Underwriters Life Ins. Co.</u>, 612 F.Supp.2d 1201 (N.D. Okla. 2009), plaintiff argues that the clause in the policy is unenforceable because it was not readily apparent.[5]  It was, he asserts, "contained in a 'Special Provisions Oklahoma' and was "one of a multitude of revisions and replacements to the original policy language."  Doc. #26, p. 7.[6]

Although plaintiff asserts there were a "multitude" of changes to the original policy language, the changes included on the "Special Provisions – Oklahoma" were limited in number.  And the revision to the limitations period is set out in bold print in a separately numbered paragraph under "SECTION 1 – PROPERTY CONDITIONS," beginning with "Suit Against Us."  Not only is the language used simple and clear, but courts have repeatedly concluded similar clauses are unambiguous and enforceable.  *See e.g.*, <u>Nikchemny v. Allstate Ins. Co.</u>, 2016 WL 6082034, at *2 (E.D.N.Y. Oct. 17, 2016); <u>Hayes v. State Farm Fire & Cas. Co.</u>, 855 F. Supp. 2d 1291, 1300–01 (W.D. Okla. 2012).

---

[5] *Plaintiff does not argue that the contractual statute of limitations provision is per se invalid.  Oklahoma law allows insurers to shorten the time period within which an action for breach of a property insurance policy can be brought.  See 36 Okla. Stat. § 3617.*

[6] *The provision appears to be identical to the original contractual limitations provision, except it extends the period from one to two years.  Compare Doc. #24-1, p. 3 ¶8 with p. 19, ¶8.*

The contractual limitations provision in <u>Blue</u> was located "on the back of the Sample Copy/Borrowers Copy of the pre-printed Application for Insurance," on a "densely packed page of 21 paragraphs in small print with 12 subheadings." <u>Blue</u>, 612 F.Supp.2d at 1204. The statement advising the insured that "You can't start any legal action more than three years after the proof is filed," was "[t]he last sentence, in the same size font, within the sixth subheading 'Rules for Filing a Disability Claim.'" *Id*. As the court stated in <u>Blue</u>, the positioning of the language "would not necessarily alert Plaintiff she was barred from 'any legal action' as opposed to on a 'disability claim.'" *Id*.

Acknowledging, as plaintiff urges, that insurance contracts are contracts of adhesion, and that a policy of insurance must be strictly construed against the insurer and in favor of the insured, the court nonetheless cannot ignore the plain language of the insurance policy. That language makes it clear plaintiff had two years from the date of any loss to sue Safeco for breach of contract.[7] The question now is whether Safeco, by its conduct "interrupted the running of the period of limitations . . . and excused the insured from strict compliance with the terms of the policy, as to the time within which such an

_____

[7] *Plaintiff asserts in his brief that defendant "never referenced a limitations clause in <u>any</u> correspondence or communications with Plaintiff." Doc. #26, p. 7. However, because plaintiff was represented by counsel, the insurer was not required by state law, specifically the Unfair Claims Settlement Practices Act, 36 Okla. Stat. § 1250.7E, to provide written notice of the expiring time period. Plaintiff has not suggested any other basis for a requirement that the insurer alert opposing counsel to a potential defense such as was involved here.*

action must be brought." <u>Ins. Co. of North America v. Bd. of Ed.</u>, 196 F.2d 901, 903 (10th Cir. 1952).

Beginning with its decision in <u>Prudential Fire Ins. Co. v. TraveTaylor Co.</u>, 152 P.2d 273, 275 (Okla. 1944), the Oklahoma Supreme Court has repeatedly held that an insurer may waive a contractual limitations period imposed by an insurance policy if it leads the plaintiff by its conduct to believe the claim will be paid. Certain property belonging to the insured plaintiff in <u>Prudential</u> was damaged in a fire. The adjustor retained by the insurer to establish the extent of the loss hired several experts to assess the property damage, but they did not complete their investigation until the limitations period was almost over. They determined the property did not sustain any appreciable damage, but that information was not communicated to the insured until the limitations period had expired. The plaintiff sued and the insurer defended on the ground the lawsuit was filed after the contractual limitations period had ended. The Oklahoma Supreme Court concluded that under these circumstances the defendant had waived the limitations period by not denying liability within enough time to permit the plaintiff to bring suit within the policy's limitations period. The court stated that the waiver was "for a <u>reasonable time</u>" after the denial of liability. *Id*. at 273 Syllabus ¶1 (emphasis added).

A similar conclusion was reached in <u>Agric. Ins. Co. v. Iglehart</u>, 386 P.2d 145 (Okla.1963), where the plaintiff filed an action for breach of contract a year after the contractual limitations period had expired. The court noted that the defendant had "at no time denied liability to [the] plaintiff." *Id.* at 146. Rather, "[t]here was merely a continuing

12

disagreement between the parties as to the amount of plaintiff's claim." *Id*. The court held that the defendant waived the policy's limitation provision "[i]n such a situation where defendant admitted liability to plaintiff, but never made payment to him on his claim, and there were intermittent negotiations for settlement of the claim." *Id*.

Waivers were also found in <u>Oklahoma Farm Bureau Mut. Ins. Co. v. Lay</u>, 398 P.2d 506 (Okla. 1965) and <u>National-Ben Franklin Ins. Co. v. McSwain</u>, 388 P.2d 501 (Okla. 1963). In <u>Lay</u> there was evidence that the plaintiff had submitted a claim for a fire loss, was told by the insurer's agent that "he would have an adjuster come out 'and settle it up,'" and that the adjuster then came and informed him "'they would settle it, fix the house back.'" <u>Lay</u>, 398 P.2d at 508. The plaintiff testified that he did not file his lawsuit within a year after the loss because the adjuster told him "'he wanted to catch the guy that set it, and they would settle it with me, not to worry about it.'" *Id*. According to the plaintiff, the "first time any representative of the defendant told him it was not going to pay the loss was in August, 1961." *Id*. He testified he then contacted his attorney and caused the action to be filed, which occurred in September 1961. The Court stated that, although some of the crucial parts of the plaintiff's testimony were contradicted by defendant's witnesses, "there was evidence, which, if believed by the jury, furnished a basis for deciding . . . that plaintiff may have been lulled by defendant's conduct into delaying the commencement of this action more than a year after his loss, in the belief that defendant was going to settle with him without the necessity of taking such action." *Id*.

Similarly, in McSwain the Oklahoma Supreme Court concluded that the evidence was sufficient to demonstrate the insurer waived the one year limitations period. It noted that the "[p]laintiff's testimony [was] clear that when she left for California in the Summer of 1957, she was made to believe by Mr. Mason, the defendant's agent, that repairs would be made upon the house in question." McSwain, 388 P.2d at 503. A contrary decision was reached in Bernstein v. Connecticut Fire Ins. Co., 315 P.2d 232 (Okla. 1957) because "negotiations [had] been broken off in sufficient time to enable the insured to commence the action within the limitation period." *Id.* at 233. There the insurer had denied liability less than four months after the loss. It had offered to compromise the claim, but the court stated the offer was "of no assistance to the plaintiff in establishing a waiver even if properly pleaded, for it affirmatively appears that the offer was in response to an inquiry of plaintiff's attorney." *Id.*

The Tenth Circuit addressed the waiver/statute of limitations issue in Ins. Co. of North America, 196 F.2d at 902-04. In that case the trial court had rejected the defendant insurer's argument that the action was barred by the applicable one year limitations period, concluding that its inequitable conduct deprived it of the defense. It found the insurer, "by its dilatory tactics, and by continuing to negotiate with the [insured] for a settlement of the claim into February, 1948, and not finally denying liability until in April, 1948," after the limitations period had expired, "misled the [insured] into believing the loss would be adjusted." *Id.* at 902. The insured had filed suit more than thirty months after the damage occurred and approximately sixteen months after the insurer denied liability.

The Tenth Circuit recognized that many courts used the term waive or waiver in this context, but determined that "these words are loosely and inaccurately treated when so used." *Id*. at 903. It interpreted Oklahoma law to hold that an insurer in this situation does not actually "waive" its right to assert the limitations period in the sense of "a complete relinquishment, extinguishment and abandonment" of the right to assert the limitations period. *Id*. at 904. Instead, it concluded that conduct such as what the insurer had allegedly engaged in there, "operate[d] to suspend the running of the statute of limitations until denial of liability and that thereafter the statute begins to run again and, if insufficient time remains to institute the action within the year, the insured may have a reasonable time thereafter to bring action." *Id.*

Plaintiff argues that the limitations period should be equitably tolled because "Defendant continued to investigate Plaintiff's claims from the time of the submission of the claim to Defendant, November 12 2011, until the date of the denial of coverage, December 30, 2013." Doc. #26, p. 9. He contends that "Defendant consumed the entirety of the statute of limitations period investigating (or failing to investigate) and did not formally deny the claim until December 30, 2013." *Id.*

The court agrees with Safeco that the facts presented here do not suggest that it "lulled" plaintiff "into inaction" for the entire two year contractual limitation period. Admittedly, defendant did for a time, after it had initially either refused coverage or ignored

plaintiff's claim, engage in conduct which could have led plaintiff to believe his claim[8] might be paid. Safeco requested information in October 2012, so it could "re-assess the damages to the home" and in December 2012, two weeks after its counsel participated in a mediation, Safeco paid plaintiff approximately $25,000. In January 2013 it had the home reinspected to address additional covered damages and it issued another check in early February. Then, in March 2013, Safeco waived its subrogation rights as to any payments it had made under the homeowners policy and made another $10,000 payment to plaintiff. After that, though, plaintiff has not offered any evidence which creates a fact question as to whether defendant, by its conduct, lead plaintiff to believe his loss would be further adjusted.

The last direct communication in the record between the parties before the contractual limitations period expired on November 10, 2013, was an email dated June 17, 2013, from plaintiff's counsel to defense counsel. Ms. Gau advised Mr. Woodson that plaintiff had reached an agreement with MAC Builders, LLC and several contractors and that, after a Global Settlement Agreement was executed by all parties, they could "discuss concluding the outstanding claims the Zewdies [had] with Safeco." Doc. #27-1. Plaintiff has not shown that Safeco responded to the email, much less indicated its willingness to pay or even to discuss any outstanding claims. Plaintiff has offered no evidence that

---

[8] *By "claim," the court is referring to all the damage for which plaintiff sought reimbursement.*

Safeco, like the insurer in <u>Iglehart</u>, ever admitted liability or, like the insurers in <u>Lay</u> or <u>McSwain</u>, told him that they would "settle it up" or that "repairs would be made."

Safeco may not have provided plaintiff with a "formal" denial of coverage until December 2013.[9] However, the limitations period is triggered by the "inception of the loss," not the denial of coverage unless, like the situation in <u>Prudential</u>, the denial follows an investigation or negotiations which consumed the entire limitations period. The evidence does not support an inference that such a circumstance occurred here. Any conduct by Safeco which might have misled plaintiff as to its intentions regarding payment of his claim concluded in the spring of 2013.

Plaintiff argues, though, that defendant, by signing the Settlement Agreement, "acknowledged that claims were still pending against it by Plaintiff." Doc. # 26, p. 9. He also contends "it can be reasonably inferred that Defendant also acknowledged that the policy's time limitation would not be a hindrance to the Plaintiff's claims as the agreement was not executed by Defendant until approximately three weeks prior to the policy's stated limitations clause deadline." *Id.*

In the Settlement Agreement, the Zewdies released their claims against some parties. By signing the document, Safeco simply agreed that the Zewdies were not

---

[9] *Although Safeco did discuss coverage issues in the letter, it was not a typical denial of coverage letter, but rather was Safeco's response to plaintiff's settlement proposal. See generally* <u>Bernstein</u>*, 315 P.2d at 233 (offer to compromise claim was "of no assistance to the plaintiff in establishing a waiver even if properly pleaded, for it affirmatively appear[ed] that the offer was in response to an inquiry of plaintiff's attorney").*

releasing any claims they sought to pursue against it under the homeowners' policy.  It cannot be inferred from the language regarding the preservation of the Zewdies' claims that Safeco is agreeing to a waiver or extension of the limitations period.  And plaintiff cites to no other provision in the Agreement which would support such an inference.  To the contrary, the agreement itself recited there were no other agreements beyond those explicitly included in it.

Plaintiff had three weeks after the Settlement Agreement was executed to file suit before the limitations period ran.  He did not sue during the remaining time period and he offers no evidence of any communication from defendant or any actions taken by defendant during those three weeks, which would warrant an extension of the contractual statute of limitations.  Having determined that the limitations period is valid and enforceable and that defendant did not, by its actions extend the period, the court concludes that plaintiff's contract claim is barred.[10]

Bad Faith[11]

---

[10] *Even if the limitations period commenced when the claim was "formally denied" on December 30, 2013, as plaintiff argues, the court would conclude that filing the action on March 3, 2015, was not commencing suit within a "reasonable time after denial of the liability thereunder."* McSwain, *388 P.2d at 502 Syllabus ¶2.*

[11] *Plaintiff can pursue a bad faith claim with respect to defendant's handling of his loss even though his breach of contract claim is time-barred.  See* McCarty v. First of Georgia Ins. Co., *713 F.2d 609, 612 (10th Cir. 1983) ("In short, the prior dismissal of the contractual claim on the statute of limitations ground does not trench upon the merit of the instant tort action.  The breach of fair dealing claim is cognizable if appellants can prove that they were entitled to payment on the underlying insurance claim.").*

The parties agrees the limitations period for plaintiff's bad faith claim is two years under Oklahoma law. *See* 12 Okla. Stat. § 95(3). They do not agree, though, as to when it accrued. Defendant asserts it commenced on November 1, 2012, the date plaintiff's counsel sent Safeco a letter asserting that Safeco had both breached the parties' contract and its duty to deal fairly and in good faith with its insured. Safeco argues that "[i]n describing Safeco's conduct as 'egregious,' Plaintiff's counsel specified acts of alleged Safeco bad faith and damages allegedly incurred by her client." Doc. #24, p. 6. It contends that the November 1 letter, plus one sent on November 16, 2012, which identifies plaintiff's bad faith claim "as an open topic for the approaching mediation" confirms that the claim accrued no later than mid-November 2012.

Plaintiff responds that as of November 2012, defendant "had not yet denied the claim, nor had it meaningfully participated in the investigation of the claim." Doc. #26, p. 10. Plaintiff asserts that Safeco, over the course of the next year, issued payments under the policy amounting to approximately $41,000 over the course of the next year and that "discussions continued between the parties until the formal denial letter from Defendant dated December 30, 2013." *Id*. at p. 11. He claims "a jury could reasonably infer that the entirety of the facts" underlying his bad faith claim did not accrue until December 30, 2013, when defendant's "drawn out illusory settlement discussions were abruptly concluded." *Id.* Alternatively, plaintiff asserts that defendant is precluded or estopped by its behavior from asserting the statute of limitations defense.

In Oklahoma, the statute of limitations "begins to run when the cause of action accrues" and "[a] cause of action accrues when a litigant could first maintain an action to a successful conclusion." Stephens v. Gen. Motors Corp., 905 P.2d 797, 799 (Okla. 1995); Lee v. Phillips & Lomax Agency, Inc., 11 P.3d 632, 634 (Okla. 2000) (statute of limitations does not begin to run until the plaintiff can successfully prove the elements of his or her claim). As evidenced by his attorney's letters, plaintiff was aware of the facts on which his bad faith claim is based as early as November 2012, and certainly no later than February 27, 2013. On that date his attorney sent a letter to Safeco's counsel confirming Safeco's participation in a mediation "to discuss settlement of certain outstanding coverage claims by the insureds." Doc. #27-2, p. 1. She expressly refers to both Safeco's failure to process covered losses, and its negligent and/or willful failure to deal fairly and in good faith with the Zewdies. Id. She specifically references the fact that because Safeco failed to process the Zewdies' claim, they were forced to pay for the repairs themselves and to "hire counsel and pursue their damages directly from [their contractor]." Id.

Similar statements regarding Safeco's conduct can be found in Ms. Gau's earlier letters. On November 1 she referred to the fact that Safeco "HA[D] NOT PAID OUT" any monies to its insured and that the insured had "incurred attorney fees and costs associated with its attempt to recover from MAC Builders, LLC and obtain payment from SafeCo for its covered claims." Doc. #24-4. She informed defendant on November 16 that if it elected to attend the December mediation it should "send a representative with full authority to settle <u>all</u> of the Insured's claims against Safeco, *i.e.,* the Insured's claim for the extensive

water damage to the lnsured's home, as well as the lnsured's claim against Safeco for its failure to deal fairly and in good faith with the Insured."  Doc. #24-6.

Plaintiff relies on the same conduct which Ms. Gau discussed in her letters as the basis for his bad faith claim in his petition.  *See* Doc. #1-2, pp. 5-6, ¶¶31-33 (failure to "timely investigate the claim, process the claim, and make payment" and "[a]s a result of SafeCo's failure to deal fairly and in good faith" with the insured he was required to pay for covered repairs and for attorney's fees in the underlying arbitration action).  As both Safeco's conduct and the injury to plaintiff, as detailed in Ms. Gau's letters, had occurred by November 2012, the limitations period for plaintiff's bad faith claim commenced at the latest by November 16, 2012.  *See* Stephens, 905 P.2d at 799 ("[A] negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative.") (internal quotation marks omitted).  Safeco's actions, which plaintiff contends affect when the statute commences -- its post-November 2012 payments under the policy and discussions and negotiations with plaintiff – potentially affect when the limitation period expires, but not when the claim accrues.

Because the court has determined that plaintiff's bad faith claim accrued no later than November 16, 2012, he had to file his lawsuit by November 16, 2014, to avoid the limitations period unless, as he asserts, defendant is estopped from asserting the defense. For plaintiff to prevent defendant from successfully raising the statute of limitations defense to a bad faith claim under Oklahoma law, he must show that

the defendant had made (a) some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period, or (b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or (c) any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry, which induces one to refrain from timely bringing an action.

Jarvis v. City of Stillwater, 732 P.2d 470, 472–73 (Okla. 2009). Plaintiff has offered no evidence of conduct by defendant that falls within categories (b) or (c). Safeco neither expressly and repeatedly admitted liability nor engaged in some type of misconduct. As has been discussed previously, plaintiff also has offered no evidence that might have led plaintiff to believe Safeco was still negotiating regarding his claims after March 2013, which was well before November 11, 2014, the date the limitations period ran on his bad faith claim. Plaintiff's bad faith claim, along with his breach of contract claim, is therefore barred by the applicable two year limitations period.

Having concluded that both plaintiff's breach of contract and his bad faith claims were filed after the applicable limitations periods had expired, defendant's motion for summary judgment [Doc. #24] is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 19th day of January, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE